IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RYAN RUFF, CRUSOE GONGBAY,
and SAQWAN EDWARDS,

        Plaintiffs,

                                                                                                               No. 1:16-CV-01140 MCA/LF

v.

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO, et al.,

        Defendants.

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' TITLE IX CLAIM

### Introduction

In Count XVIII of their First Amended Verified Complaint for Civil Rights Violations and State Tort Claims ("First Amended Complaint" or "FAC") [Doc. 11], Plaintiffs Ryan Ruff, Crusoe Gongbay, and SaQwan Edwards plead that they were discriminated against on the basis of their sex or gender in violation of Title IX of the Educational Amendments Act of 1972 ("Title IX"). A female student of the University of New Mexico reported to the campus police department that Plaintiffs sexually assaulted her in the late evening or early morning of April 12-13, 2014. Plaintiffs generally allege that UNM campus police officers then conducted a flawed criminal investigation that was biased in favor of the accuser.

Plaintiffs bring a Title IX claim against Defendants Board of Regents of the University of New Mexico ("UNM") and UNMPD Officers Kevin McCabe, Timothy Stump, Trace Peck, David Romero, Robert Duren, Luis Santiago, Michael Catanach, Nina Fox, and Guadalupe Pete Guevara (collectively "Individual Defendants"). The claim against the Individual Defendants fails as a matter

of law because UNM officials cannot be held individually liable for violations of Title IX. Plaintiffs also fail to state a viable Title IX claim against UNM, because they have only made conclusory allegations of gender bias. Plaintiffs' Title IX claim against Defendants should be dismissed with prejudice for failure to state a claim upon which relief may be granted.[1]

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." "In reviewing a motion to dismiss, [the] court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Tenth Circuit has held that a two-step process should be utilized when analyzing a motion to dismiss: first, the court must identify conclusory allegations not entitled to the assumption of truth, and, second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (discussing the process).

## Plaintiffs' Allegations

In their First Amended Complaint, Plaintiffs make repetitive allegations regarding UNMPD's criminal investigation of them for a reported sexual assault. Plaintiffs theories are that UNMPD officers were motivated to obtain their convictions to appease the United States

---

[1] Defendants also seek the dismissal of Counts I through XVII of the First Amended Complaint and have concurrently filed a Motion to Dismiss Plaintiffs' Section 1983 Claims [Doc. 16] and a Motion to Dismiss Plaintiffs' State Law Tort Claims [Doc. 18].

Department of Justice—which was allegedly conducting an investigation into UNM's handling of student sexual harassment complaints[2]—and/or to stave off possible loss of federal revenue to UNM and/or to achieve acclaim for UNMPD and its officers. (*See* FAC, ¶¶ 2-7, 11-14, 24, 37-38, 41, 55, 72, 319-22, 333, 401, 415-16, 419-22, 437).

Plaintiffs allege that, on April 12-13, 2014, a white female UNM student reported to her resident advisor that she was sexually assaulted by three black men, and, as a result, UNMPD was contacted and immediately commenced a criminal investigation. (*See* FAC, ¶¶ 109-12). Plaintiffs repeat *ad nauseam* the conclusory allegation that UNMPD officers began to build a criminal case against them knowing that Plaintiffs were "innocent" and that there was a lack of probable cause to support their subsequent arrest and prosecution. (*See* FAC, ¶¶ 115-18). The specific facts alleged in support of Plaintiffs' allegations are paper thin:

- Plaintiffs allege that UNMPD officers should have known that the accuser's report of sexual assault was false based on unspecified internal inconsistencies in the version of events that she initially reported. (*See* FAC, ¶¶ 114, 120, 147-51, 414).

- Plaintiffs allege that UNMPD officers gave undue credence to the accuser's report of sexual assault despite evidence that the accuser may have engaged in sexual conduct with other men earlier in the evening. (*See* FAC, ¶¶ 139, 345-50, 357-61).

- Plaintiffs allege, upon information and belief, that UNMPD officers either became aware or should have become aware of exculpatory video evidence during their investigation. The alleged exculpatory evidence consisted of Snapchat videos of sexual activity between Plaintiffs and the accuser that were in Plaintiffs' own possession. Plaintiffs also allege that UNMPD officers should have been able to obtain surveillance video from a parking lot that would have shown Plaintiff Ruff and the accuser voluntarily engaging in sexual activity in a car. (*See* FAC, ¶¶ 152, 375-76, 380-81, 387-88).

- Plaintiffs allege that several UNMPD officers engaged in an audio-recorded colloquy evidencing their racial animus and intent to pursue baseless criminal charges against

---

[2] Although Plaintiffs' allegations must be accepted as true for the purpose of this Motion to Dismiss, it should be noted that Plaintiffs are incorrect regarding the timeline of events. Plaintiffs were accused of sexual assault by a UNM female student in April 2014 and the criminal investigation of Plaintiffs was concluded in July 2014, but the DOL did not initiate its investigation of UNM until December 2014.

them. Specifically, Plaintiffs allege that one unidentified officer stated, "You guys are just trying to railroad these guys, man," and another unidentified officer responded, "Yeah, well, we made him get Paul Kennedy, right? That's how we do it round here." UNMPD Sgt. Guevara allegedly stated, "I've always wanted that big f—ing case with high big dollar attorney stuff, and let's get in the f—ing ring and get it on." Sgt. Guevara also allegedly stated: "This is going to be my biggest case I have ever done. I have had some big cases. This is going to rival it. This is going to be my Everest and my last. I'm going to insist that I get pulled off this f—ing rotation." Finally, Sgt. Guevara allegedly said, "But, it's all Crusoe. It's all Crusoe, it's none of these other guys, you know. But, if we can put them all together, especially Crusoe. If Crusoe's got several charges over his head, that guy's going to sing like a bird. They all know him by name." (*See* FAC, ¶¶ 158-287, 335(a)).

- Plaintiffs allege that Sgt. Guevara attempted to have the accuser alter her allegations to fit the evidence. Specifically, the accuser had initially reported that she met the Plaintiffs at the Student Residence Commons ("SRC") and Sgt. Guevara had asked her whether it was possible that she had mistaken the apartment shown in Snapchat videos as the SRC dorms where she had previously stated that she had met Plaintiffs. (*See* FAC, ¶¶ 294-310, 335(b)).

Based on these allegations, in Count XVIII of the First Amended Complaint, Plaintiffs assert a claim against all Defendants for violation of Title IX. Plaintiffs allege "Defendants UNM and UNM Police Department actively discriminated against Plaintiffs on the basis of sex by failing to properly, timely and/or adequately investigate claims of sexual assault against them by a female student, and failing to afford them the same degree of access to investigation materials, discovery, equal protection of the law, and due process of law." (*See* FAC, ¶ 662). Plaintiffs more specifically allege Defendants discriminated against them by:

- "[F]ailing to provide them the same opportunity given to their accuser, a female student, to properly defend themselves against the charges levied against them" (*see* FAC, ¶ 664);

- "[I]gnoring numerous inconsistent statements made by the female accuser, and fail[ing] to procure video evidence which greatly called into question [the accuser's] accusations and detailed accounts of the alleged incident" (*see* FAC, ¶ 665);

- "[M]aliciously filing a criminal complaint they knew or should have known was not based upon probable cause or sufficient evidence to support prosecution of the charged sexual assault" (*see* FAC, ¶ 666);

- "[S]uspending two Plaintiffs [Mr. Gongbay and Mr. Edwards] from the UNM Football program indefinitely, prior to the conclusion of Defendant [UNM's] investigation of the alleged criminal sexual assault charges wrongfully levied against Plaintiffs" (*see* FAC, ¶ 667); and

- "[B]ann[ing] Plaintiff Ryan Ruff,[3] a former male UNM student 'indefinitely' from its campus prior to the conclusion of the investigation into sexual assault allegations made against him by a female student . . . without due process of law or equal protection of the law" (*see* FAC, ¶ 668).

## **Title IX Standards**

Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Congress intended, through Title IX, "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979). The Supreme Court has made clear that a claim under Title IX cannot be premised on the disparate impact that a policy has with respect to a protected group. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (comparing Title IX to Title VI). Therefore, "in order to establish a claim of discrimination under Title IX, a plaintiff must ultimately show that the defendant discriminated against him or her *because of sex*; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions." *Doe v. Columbia Univ.*, 101 F.Supp.3d 356, 367 (S.D.N.Y. 2015) (emphasis in original) (cited authority omitted).

---

[3] Plaintiff Ruff was not a UNM student at the time of the alleged sexual assault or at the time that he was excluded from UNM's campus. It is doubtful that the indefinite exclusion of Plaintiff Ruff from UNM's campus implicates Title IX, because Plaintiff Ruff was not denied participation or the benefits of any educational program or activity in which he was participating or in which he was seeking to participate. Plaintiff Ruff's Title IX claim against UNM is tantamount to a customer banned from a retail store for suspected shoplifting, then bringing a claim of employment discrimination under Title VII of the Civil Rights Act of 1964. Such a customer would not have a viable employment discrimination claim under Title VII, and, likewise, Plaintiff Ruff does not have a viable educational discrimination claim under Title IX. For this additional reason, Plaintiff Ruff's Title IX claim against UNM fails as a matter of law.

**Argument**

As a threshold matter, "Title IX does not authorize a cause of action against individuals; rather, it creates a right enforceable against educational institutions only." *Schaefer v. Las Cruces Public Sch. Dist.*, 716 F.Supp.2d 1052, 1068 (D.N.M. 2010) (*citing Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.")). The Title IX claim as brought against the Individual Defendants therefore automatically fails as a matter of law and should be dismissed with prejudice.

Turning to the claim as brought against UNM, Title IX discrimination claims can be sorted into four broad categories: "erroneous outcome," "selective enforcement," "deliberate indifference," and "archaic assumptions." *See Doe v. Univ. of Cincinnati*, 173 F.Supp.3d 586, 606 (S.D. Ohio 2016) (quoting *Mallory v. Ohio Univ.*, 76 F.App'x 634, 638-39 (6th Cir. 2003) (unpublished)). Plaintiffs have not articulated which of these theories their Title IX claim is based upon—in fact, there is a dearth of case law considering whether a Title IX claim can be premised at all on the alleged conduct of campus law enforcement officers during a criminal investigation as opposed to the alleged conduct of school administrators during school disciplinary proceedings. But, Plaintiffs' theory of gender discrimination most closely resembles a claim of "selective enforcement,"[4] which

---

[4] None of the other theories make any sense on the facts alleged in the First Amended Complaint:

First, in an "erroneous outcome" case, "the plaintiff contends that the <u>outcome of the disciplinary proceeding was erroneous</u> due to gender bias." *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 606 (emphasis added); *see also Ritter v. Okla. City Univ.*, 2016 WL 3982554, *1 (W.D. Okla.) ("An erroneous outcome claim is based on allegations that the plaintiff was innocent and wrongly <u>found to have committed an offense</u>.") (quotation marks and quoted authority omitted and emphasis added). In this case, Plaintiffs were not found by UNM to have committed any offense and Plaintiffs were not disciplined by UNM.

is typically "based on allegations that, 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'" *Ritter*, 2016 WL 3982554, \*1 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

Federal courts have consistently found that, irrespective of the particular theory, a plaintiff pursuing a Title IX claim must allege sufficient facts that, if true, would establish gender bias. *See, e.g., Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 606 ("[U]nder any theory, Plaintiffs must still

---

Second, in a "deliberate indifference" case, "the plaintiff alleges that a university official who had authority to implement corrective measures had actual notice of but was deliberately indifferent to misconduct directed at the plaintiff" and "seems for the most part to be limited to sexual harassment cases." *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 606; *see also Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) ("A school district may be liable under Title IX provided it (1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school."). To the extent Plaintiffs might argue that they were sexually harassed by being accused of rape by a female student and that UNM officials condoned the conduct of the female student, such a legal theory has been flatly rejected.

In *Nungesser v. Columbia University*, 169 F.Supp.3d 353, 363 (S.D.N.Y. 2016), the plaintiff was a male student who claimed that Columbia University was deliberately indifferent to the conduct of a female student who accused him of rape. The Court stated that the plaintiff's claim was based on the "logical fallacy . . . that because the allegations against him concerned a sexual act that everything that follows from it is 'sex-based' within the meaning of Title IX." *Id.* at 364. The Court found that his argument was wrong and "would lead to the conclusion that those who commit, or are accused of committing, sexual assault are a protected class under Title IX. The statute does not permit that result." *Id.* The Court elaborated:

> To hold otherwise would, in essence, create a new right of action under which students accused of sexual assault could bring a Title IX claim against their educational institutions—so long as they could plausibly plead that the accusations were known to the institution and that the institution failed to silence their accusers—simply because the misconduct they were accused of has a sexual element. Neither the text nor the purpose of Title IX supports this conclusion, and the Court declines to read it into the statute.

*Id.* at 367.

Third, in an "archaic assumptions" case, "the plaintiff contends that the university's actions were founded on archaic assumptions about men and women." *Doe v. Univ. of Cincinnati*, 173 F.Supp.3d at 606. "The archaic assumption standard applies when a plaintiff seeking equal athletic opportunities demonstrates discriminatory intent in actions taken because of classifications based upon archaic beliefs and stereotypes about gender." *Marshall v. Ohio Univ.*, 2015 WL 7254213, \*8 (S.D. Ohio) (unpublished); *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 880 (5th Cir. 2000) ("If an institution makes a decision not to provide equal athletic opportunities for its female students because of paternalism and stereotypical assumptions about their interests and abilities, that institution intended to treat women differently because of their sex."). It is a simply <u>not</u> a theory applicable to the alleged facts in this case, *i.e.*, when Plaintiffs complain that they were subjected to a flawed criminal investigation of a reported sexual assault. *See Marshall*, 2015 WL 7254213, \*8 (declining to extend the "archaic assumptions" theory "to analyze allegations about discrimination in a university disciplinary proceeding in the absence of controlling Sixth Circuit precedent").

allege facts sufficient to conclude that UC's conduct was motivated by gender bias."); *Johnson v. W. State Colo. Univ.*, 71 F.Supp.3d 1217, 1224 (D. Colo. 2014) ("While some of the elements of the claims are different under these [erroneous outcome and selective enforcement] theories, both require that Plaintiff show that gender bias was a source of the deprivation."). As the Second Circuit Court of Appeals held long ago:

> [A]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss . . . . A plaintiff must also allege particular circumstances relating to a causal connection between the flawed outcome and gender bias.

*Yusuf*, 35 F.3d at 715; *cf. Khalik v. United Air Lines*, 671 F.3d 1188, 1193-94 (10th Cir. 2012) (holding that generalized and conclusory allegations of discrimination are insufficient to state a claim for violation of Title VII under the *Twombly*/*Iqbal* standard).

Plaintiffs allege their female accuser was treated more favorably by UNM. Specifically, Plaintiffs allege UNMPD officers demonstrated gender bias by "failing to afford them the same degree of access to investigation materials, discovery, equal protection of the law, and due process of law" as their female accuser. (*See* FAC, ¶ 662). While "[a] plaintiff may meet his *prima facie* burden of creating an inference of gender discrimination by stating facts showing that he was treated differently than someone of the opposite gender who was similarly situated to him," *Johnson*, 71 F.Supp.3d at 1224, the federal courts have uniformly recognized that the alleged victims of sexual assault are <u>not</u> similarly situated to the alleged perpetrators of sexual assault. As one federal district court has succinctly stated: "Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778 (S.D. Ohio 2015); *accord Haley v. Va. Commonwealth Univ.*, 948 F.Supp. 573, 579 (E.D. Va.

1996) ("[A] bias against people accused of sexual harassment and in favor of victims . . . indicate[s] nothing about gender discrimination.").

Plaintiffs also push a related theory that UNMPD officers were motivated to obtain their convictions to appease the United States Department of Justice, which Plaintiffs incorrectly allege was conducting an investigation of UNM's general handling of sexual harassment claims. The overwhelming majority of federal courts, though, have found allegations that a university was influenced by the national and local backlash against sexual assault on campuses insufficient to demonstrate that the university's actions were motivated by gender bias. For example, in *Doe v. Regents of the University of California*, 2016 WL 5515711 (C.D. Cal.) (slip op.), a male student disciplined for sexual assault alleged that his university had cracked down on him because it was experiencing local and national pressure regarding its handling of allegations of sexual misconduct. The District Court summarized the male student's allegations:

> Plaintiff alleges that his disciplinary outcome was rendered in the context of glowing national and local backlash against sexual assaults on campuses, including campaigns directed against male students such as "Don't Be That Guy," statements by [his university] that sexual assaults were predominantly committed by men against women, and a Roundtable discussion wherein [the Assistant Dean of Students] was personally criticized for not finding more men guilty.

*Id.* *4. In dismissing the Title IX claim, the District Court found that these allegations "fail to give rise to a plausible inference that the outcome of his disciplinary proceeding was motivated by gender." *Id.* *5.

In an even more recent case, *Austin v. University of Oregon*, -- F.Supp.3d --, 2016 WL 4708540 (D. Or.) (slip op.), the district court dismissed a Title IX claim brought by student male athletes who were suspended and who lost their athletic scholarships after a female student accused them of sexual assault. The district court noted that, if intense scrutiny placed on universities to

9

aggressively respond to allegations of student sexual misconduct were deemed to constitute evidence of gender bias, then universities would be placed in an untenable bind: "Either they come under public fire for not responding to allegations of sexual assault aggressively enough or they open themselves to Title IX claims simply by enforcing rules against alleged perpetrators." *Id.* *9. Instead, the district court reached the precise conclusion that should be reached in this case: "Plaintiffs have failed to show how the University's enforcement of its student conduct, <u>even if it had been overzealous</u>, equates to sex discrimination." *Id.* (emphasis added).

Finally, Plaintiffs make much ado in the First Amended Complaint regarding the alleged colloquy between UNMPD officers in which unidentified officers alluded to "trying to railroad these guys" and in which Sgt. Guevara referred to the case as his "Everest" and was focused on getting Plaintiff Gongbay "to sing like a bird." (*See* FAC, ¶¶ 158-287). Gender bias may be shown by "statements by pertinent university officials," *Yusuf*, 35 F.3d at 715, but, even if the statements by UNMPD officers in the alleged colloquy are troubling, they do not evidence gender bias. There were no references to the Plaintiffs' gender; there were no gender-based slurs uttered; and there were no statements to suggest that any of the male UNMPD officers whose statements were caught on tape harbor a discriminatory bias against their own gender. At best, the colloquy would show some sort of personal animus that UNMPD officers held against Plaintiffs (or, more particularly, against Plaintiff Gongbay); however, "[p]ersonal animus is not gender-based [discrimination], and cannot form the basis for a Title IX violation." *Nungesser*, 169 F.Supp.3d at 366.

## Conclusion

For the foregoing reasons, Defendants respectfully request the Court dismiss Plaintiffs' Title IX claim against them for failure to state a claim upon which relief can be granted.

SHEEHAN & SHEEHAN, PA.
*Attorneys for Defendants*
P.O. Box 271
Albuquerque, NM 87103
(505) 247-0411; (505) 842-8890 (fax)

By: /s/ Quentin Smith
_____
Quentin Smith
Leah M. Stevens-Block
Brian E. McMath

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Title IX Claim was electronically filed using the CM/ECF system, which caused a copy to be sent by email to Plaintiffs' counsel, Bleus & Associates, LLC (George Anthony Bleus), on this 24th day of February, 2017.

/s/ Quentin Smith
_____
Quentin Smith

S:\16300\PLDG\First Lawsuit - Fed Pldgs\20170224 MEMO re MTD Title IX Claim (QS) (bem cite checks).docx