IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RYAN RUFF, CRUSOE GONGBAY,
and SAQWAN EDWARDS,

      Plaintiffs,

v.                                     **No. 16-CV-1140 MCA/LF**

BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claims* [Doc. 16] and *Defendants' Motion to Dismiss Plaintiffs' State Law Tort Claims* [Doc. 18]. The Court, having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, hereby **GRANTS** both *Motions*.

## PROCEDURAL AND FACTUAL BACKGROUND

Because the pending motions are motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court sets forth the relevant plausible factual allegations in Plaintiffs' *First Amended Verified Complaint for Civil Rights Violations and State Tort Claims* [Doc. 11] (hereafter, *Complaint*), accepts them as true, and grants all reasonable inferences the plausible factual allegations allow. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

During the relevant period, Plaintiff Ryan Ruff was a student at Central New Mexico Community College. [Doc. 11, ¶ 121] Plaintiffs Crusoe Gongbay and SaQwan Edwards were students at the University of New Mexico (UNM) and were on UNM's football team. [Doc. 11, ¶¶ 127, 133, 670] All three Plaintiffs are African American men. [Doc. 11, ¶ 452] In April of 2014, Courtney Spencer, a white female student at UNM, accused all three Plaintiffs of sexually assaulting her. [Doc. 11, ¶ 19] Plaintiffs, however, allege that Spencer engaged in consensual sexual activity with all three of them and that there were witnesses and video evidence which showed that the sexual acts were consensual.[1] [Doc. 11, ¶¶ 363, 369, 379, 380, 383, 386] Plaintiffs now sue the Board of Regents of UNM, the Chief of Police of the UNM Police Department (UNMPD), and eight named UNMPD officers in their individual and official capacities. Plaintiffs generally allege that Defendants violated their constitutional rights, violated federal statutes, and committed various torts in conducting a deficient investigation and in pursuing criminal charges against them. [Doc. 11, ¶ 28]

As pleaded by Plaintiffs, at some point in the late hours of April 12, 2014, or the early hours of April 13, 2014, Spencer reported to a resident advisor that she was "kidnapped and gang-raped by (3) three black men[] in the back seat of a small dark colored passenger vehicle." [Doc. 11, ¶¶ 109-111] The resident advisor contacted UNM authorities and UNMPD began to investigate the alleged crime. [Doc. 11, ¶ 111] Shortly

---

[1] Because the present motions are motions to dismiss, the Court has not received or reviewed any evidence, including the video evidence, and the Court assumes Plaintiffs' characterization of the evidence is correct.

thereafter, Spencer met with a sexual assault nurse examiner and gave a detailed statement to UNMPD officers. [Doc. 11, ¶ 113]

Plaintiffs allege that various statements by Spencer were inconsistent with other evidence available to UNMPD. Plaintiffs allege that evidence available to Defendants, but not collected, demonstrated that Spencer attended a gathering of ten people (none of whom were the Plaintiffs in this case) in a dorm room sometime after 9:00 p.m. on April 12, 2014. [Doc. 11, ¶ 343-44] At that gathering, several witnesses observed Spencer "engaging in stripping activities, partially unclothed lap dances, . . . kissing of various party attendees[,]" and "groping the genitalia" of one of the attendees "during one of her provocative and lascivious 'lap dances.'" [Doc. 11, ¶¶ 345, 347, 348, 349] "One of the attendees even videotaped" Spencer groping an attendee during a lap dance. [Doc. 11, ¶ 348] This gathering disbanded by 11:30 p.m., and Spencer left with two of the male attendees of the gathering to go to an "off campus house party." [Doc. 11, ¶¶ 352, 353, 355, 356] On the way, Spencer offered to perform fellatio on the driver, and did so briefly once he parked his vehicle outside the house party. [Doc. 11, ¶¶ 357, 358] Thereafter, the driver left his vehicle, and Spencer and the male passenger "engaged in additional voluntary sexual acts, first engaging in [fellatio], which gravitated to unprotected sexual intercourse, in the back seat." [Doc. 11, ¶¶ 359, 360] Thereafter, Spencer and the male passenger exited the vehicle, and "[a]ccording to numerous fact witness accounts, in the early morning hours of approximately 12:30 a.m. on April 13, 2014, Courtney Spencer for the first time[] encountered Plaintiffs Ruff, Gongbay, and Edwards, who were accompanied by [a male] fact witness." [Doc. 11, ¶ 363]

Spencer "intercepted" the four men, who were walking to Plaintiff Ruff's vehicle, engaged in conversation and "lewd and suggestive behavior towards the Plaintiffs[,] including specific sexually charged comments directed at the Plaintiffs" and suggested that she wanted to go with them to Plaintiff Gongbay's residence because "she was 'bored.'" [Doc. 11, ¶¶ 366, 367] During this interaction, she also purportedly "groped the genitalia of Plaintiff Gongbay." [Doc. 11, ¶ 369] Plaintiffs allege that "proper investigation[] would have revealed that at approximately 12:45 to 1:15 a.m. on the morning of April 13, 2014, Courtney Spencer voluntarily entered the <u>front passenger side</u> of Plaintiff Ruff's BMW, voluntarily sitting on the lap of Plaintiff Edwards in the front passenger seat." [Doc. 11, ¶ 371] "While in the front seat of Plaintiff Ruff's BMW, Ms. Spencer disrobed to her underwear and gave Plaintiff Edwards a provocative and sexually charged 'lap dance[,]'" "'twerking' on Plaintiff Edwards, taking off her clothes and groping the Plaintiffs." [Doc. 11, ¶¶ 373, 374] One of the Plaintiffs recorded "Spencer's lewd and lascivious behavior [including the lap dance] on a cellular telephone in a [S]napchat video, showing the Plaintiffs and Ms. Spencer laughing and singing to the <u>song</u> 'Slutty-boy Gangbang.'" [Doc. 11, ¶ 375]

"After arriving at Plaintiff Gongbay's apartment, Ms. Spencer continued her provocative behavior by removing the remainder of her clothing, voluntarily engaging in erotic dancing, grinding on the Plaintiffs and offering sexual acts to Plaintiff Edwards." [Doc. 11, ¶ 378] "Plaintiff Edwards accepted Ms. Spencer's offer and the two engaged in voluntary consensual sex within the Gongbay residence." [Doc. 11, ¶ 379] "Albeit distasteful, one of the Plaintiffs recorded Ms. Spencer's sexual act in the Gongbay

4

apartment in a [S]napchat video, including but not limited to her voluntarily engaging in oral and vaginal sex with Plaintiff Edwards." [Doc. 11, ¶ 380]

> This [Snapchat] video documented that Ms. Spencer was the aggressor during the sexual interlude with Plaintiff Edwards, showing Ms. Spencer on top of Plaintiff Edwards while [per]forming fellatio as Plaintiff Edwards smiled to the camera. Further, while in the missionary position, Ms. Spencer was recorded pulling Plaintiff Edwards onto her on several occasions.

[Doc. 11, ¶ 381]

Thereafter, at some time before 3:00 a.m. on April 13, 2014, Plaintiff Ruff offered to take Spencer back to her dorm, and she agreed. [Doc. 11, ¶ 384] "Ms. Spencer complained to Plaintiff Ruff that 'she had not been sexually satisfied' that evening and asked Plaintiff Ruff to pull the car over in a [parking] lot at her dormitory. Plaintiff acquiesced and the two engaged in sexual intercourse in Plaintiff Ruff's car." [Doc. 11, ¶ 385] "During their sexual interlude, Plaintiff Ruff's vehicle was parked at the Casa Del Rio Dorms in full view of numerous video cameras on that campus. While parked, Ms. Spencer proceeded to take Plaintiff Ruff's pants off and performed oral sex on him, which was followed by voluntary consensual sexual intercourse." [Doc. 11, ¶ 386] Thereafter, Spencer, forgetting that she left her cell phone and purse at the dorm room gathering earlier, began searching around in Plaintiff Ruff's vehicle for her items. [Doc. 11, ¶¶ 389, 395] In searching the vehicle, she grabbed Plaintiff Ruff's "legally registered handgun," thus observing and potentially leaving her fingerprints on the gun. [Doc. 11, ¶¶ 391, 392] Spencer left the vehicle, and at that time was "noticeably upset at Plaintiff

Ruff, since she could not locate her purse or phone and complained that the items were still in" his vehicle.  [Doc. 11, ¶ 395]

Plaintiffs allege that it was "apparent that there were numerous inconsistencies in [Spencer's] reported story, which should have been obvious to a well-trained, experienced, proficient and unbiased investigator." [Doc. 11, ¶ 114]  However, Plaintiffs allege that the UNMPD officers working on the case "were either[] untrained; grossly undertrained; and/or failed to follow standard operating procedures (S.O.P[.]'s) for the proper investigation of sexual assaults." [Doc. 11, ¶ 318]  Defendants UNMPD officers "were directed to conduct their criminal investigation, intentionally targeting the three African American Plaintiffs alleged to be involved in the crime." [Doc. 11, ¶ 115] Accordingly, during the week following the alleged assault, "[d]espite having early knowledge of crucial and important details, . . . [including] the location of the alleged crime, details of the facts and the location of important evidence[], Defendants knowingly and intentionally failed to identify important witnesses and/or secure valuable evidence." [Doc. 11, ¶ 116]  Plaintiffs assert that Defendants failed to obtain, preserve, and review surveillance video footage, failed to secure statements, and allowed witnesses to disappear. [Doc. 11, ¶¶ 632, 635]  Moreover, according to Plaintiffs, Defendants built a criminal case against Plaintiffs, "knowing that [Plaintiffs] were *innocent* and that probable cause did not support arrest or prosecution." [Doc. 11, ¶ 118]

Eight days after the alleged sexual assault, on April 21, 2014, UNMPD filed criminal complaints and obtained arrest warrants for Plaintiffs Ruff and Gongbay.  [Doc. 11, ¶¶ 121, 123, 127, 128]  On April 29, 2014, Plaintiff Edwards was detained and

arrested by UNMPD.  [Doc. 11, ¶ 133]  Plaintiffs were charged with kidnapping and criminal sexual penetration.  [Doc. 11, ¶¶ 121, 127, 133]  All three Plaintiffs adamantly denied the charges and proclaimed their innocence.  [Doc. 11, ¶¶ 126, 132, 137]

On April 25, 2014, Plaintiff Edwards submitted DNA to UNMPD pursuant to a warrant.  [Doc. 11, ¶ 158]  There is an audio recording of an exchange between various UNMPD officers after the DNA collection was completed and Edwards left the room. [Doc. 11, ¶ 158]  During the exchange, Defendant Guevara, the lead investigator of the case, stated:[2]

> But it's all Crusoe.  It's all Crusoe, it's none of these other guys, you know. . ."  "But, [i]f we can put them all together, especially Crusoe. . . . If Crusoe's got several charges over his head, that guy's going to sing like a bird.  They all know him by name."

[Doc. 11, ¶¶ 142, 273]  In another exchange between the officers, an unidentified officer stated, "You guys are just trying to railroad these guys, man. . ." to which another unidentified officer stated "'Yeah, well, we made him get [an attorney,] Paul Kennedy, right?' [Officer SINGING] 'That's how we do it [']round[] here. . .'"  [Doc. 11 ¶¶ 202-206]  Defendant Guevara also stated that this case was going to be the biggest case he had ever done, his "Everest," and that he always wanted a "big fucking case with high big dollar attorney stuff, and let's get in the fucking ring and get it on."  [Doc. 11, ¶¶ 231, 255]  Plaintiffs allege that these statements show that "Defendant UNMPD Officers knew and/or had reason to believe that at least two of the Plaintiffs[] (Ryan Ruff and SaQwan

---

[2] The Court sets out the alleged statement as set forth in the *Complaint*, including the ellipses and quotation marks.  It is unclear to the Court whether statements are omitted from this recitation.

Edwards) were *innocent*, but Defendants moved forward pursuing criminal charges" against them anyway. [Doc. 11, ¶ 288] Plaintiffs also allege that these statements demonstrate that Defendants UNMPD Officers acted out of "racial animus." [Doc. 11, ¶ 158]

Plaintiffs allege that their counsel provided exculpatory video evidence (although the *Complaint* does not state the date this evidence was disclosed). [Doc. 11, ¶¶ 293, 296] However, even after Officer Guevara had the video evidence, he continued to pursue the allegations against Plaintiffs by interviewing Spencer on June 16, 2014 and suggesting to her that she was mistaken about details in the video, thus attempting to influence her to "alter her previous testimony." [Doc. 11, ¶¶ 296-310]

The charges against Plaintiffs were eventually dismissed by *nolle prosequi.* [Doc. 11, ¶ 644] Nonetheless, prior to the conclusion of the criminal investigation, UNM indefinitely suspended Plaintiffs Gongbay and Edwards from playing football [Doc. 11, ¶¶ 667] and indefinitely banned Ruff from its campus. [Doc. 11, ¶ 668] UNM's Office of Equal Opportunity conducted a separate disciplinary investigation contemporaneous with the criminal investigation. [Doc. 11, ¶¶ 407, 408] Ultimately, that investigation found that there was "no credible or actionable evidence" against Plaintiffs Gongbay and Edwards (the UNM students), and Plaintiffs do not sue based on that outcome. [Doc. 11, ¶ 410]

Additional allegations, as necessary, are set forth below in discussing Plaintiffs' claims.

**STANDARD OF REVIEW**

8

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for "failure to state a claim upon which relief can be granted." In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court adopted the following test governing Rule 12(b)(6) motions to dismiss: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). The Court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint, *Shrader v. A1 Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted); provided that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

"[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be

considered on a motion to dismiss" without converting the motion to dismiss into a

motion for summary judgment. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130

F.3d 1381, 1384 (10th Cir. 1997). When public records are referenced in the complaint, a

court reviewing a motion to dismiss may consider such documents. *See Eckert v.

Dougherty*, 658 F. App'x 401, 404 n.1 (10th Cir. 2016) (unpublished decision) (stating,

in considering whether a warrant application demonstrated probable cause, that the Court

"ha[s] authority to review [the search warrant and warrant application] because we may

take judicial notice of public records" (internal quotation marks and citation omitted));

*Aragón v. De Baca Cnty. Sheriff's Dep't*, 93 F. Supp. 3d 1283, 1287 (D.N.M. 2015)

(considering a search warrant application relied on by the plaintiff in her complaint,

provided by the defendants, and the authenticity of which was not disputed by the

plaintiff, in deciding whether the officers were entitled to qualified immunity based on

warrant application).

## DEFENDANTS' MOTION TO DISMISS § 1983 CLAIMS [Doc. 16]

### *Standard Governing Qualified Immunity*

> The doctrine of qualified immunity shields officials from civil liability so
> long as their conduct does not violate clearly established statutory or
> constitutional rights of which a reasonable person would have known. . . .
> A clearly established right is one that is sufficiently clear that every
> reasonable official would have understood that what he is doing violates
> that right. . . . Put simply, qualified immunity protects all but the plainly
> incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (internal quotation marks and citations

omitted). The Court must not "define clearly established law at a high level of

generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "[T]he driving force behind

creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal brackets, quotation marks, and citation omitted). "The judges of the district courts . . . [have] discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

### All Section 1983 Claims Against Defendant UNM and the Individual Defendants in their Official Capacity

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Defendants argue that Defendant UNM and the individual Defendants in their official capacity are not persons pursuant to Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").[3] [Doc. 17, p. 4] Plaintiffs respond with two arguments.

Plaintiffs respond by first arguing that UNM waived immunity under the Eleventh Amendment with regard to Plaintiffs' Section 1983 claims. [Doc. 26, pp. 9-10]

---

[3] Because suing an individual defendant in his or her official capacity is "another way of pleading an action against the county or municipality [he or she] represent[s]," *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010), for the remainder of this section of the *Opinion* the Court will collectively refer to the individual Defendants in their official capacity along with UNM as "UNM."

Defendants, however, make no argument based on the Eleventh Amendment, and in fact "UNM concedes it waived its Eleventh Amendment immunity by removing this case to federal court." [Doc. 17; Doc. 33, p. 2] Accordingly, this Court does not find that UNM has immunity under the Eleventh Amendment with regard to Plaintiffs' Section 1983 claims. Further, Plaintiffs misunderstand the difference between Eleventh Amendment immunity, which a state can waive if it removes state-law claims to federal court, and claims brought pursuant to Section 1983. However, our Supreme Court addressed this issue in *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002). Therein, the Court held that a state waives Eleventh Amendment immunity when it removes a case to federal court, but expressly limited its holding to state-law claims. *Id.* With regard to claims brought under Section 1983, the Court recognized that a state (including a state university) is not a person as defined by the statute. *Id.* The same holding is required in this case, and thus the Court concludes that Plaintiffs' Eleventh Amendment argument is unpersuasive.

Second, Plaintiffs argue that UNM should not be dismissed because UNM, under the name of the Regents of the University of New Mexico, is an entity which can sue and be sued pursuant to the New Mexico Tort Claims Act (NMTCA). NMSA 1978, § 21-7-4 (1889) ("The regents of the university and their successors in office shall constitute a body corporate under the name and style of, the regents of the university of New Mexico, with the right, as such, of suing and being sued."). [Doc. 26, p. 11] The Court takes no issue with this statement of law – however, its application here is of no help to Plaintiffs. Just like the Eleventh Amendment, the NMTCA does not change the definition of the

term "person" under Section 1983. Pursuant to Section 1983, neither a state, an arm of the state, nor an individual defendant in his or her official capacity, can be sued for monetary damages because they are not "persons" as defined by the statute.[4]  *Hafer v. Melo*, 502 U.S. 21, 26-27 (1991).

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will*, 491 U.S. at 70-71. Accordingly, Plaintiffs' Section 1983 claims against UNM (and against the individual defendants in their official capacities) must be dismissed.

### All Section 1983 Claims Against Defendants Romero, Duren, Santiago, Catanach, and Fox

Next, Defendants argue that Plaintiffs' Section 1983 claims against Defendants Romero, Duren, Santiago, Catanach, and Fox should be dismissed because Plaintiffs failed to plead factual allegations against each of them which provide them with fair notice of Plaintiffs' allegations against them.  [Doc. 17, pp. 5-7]  Defendants correctly argue that Plaintiffs failed to meet the *Iqbal/Twombly* requirements to state a claim with regard to these five Defendants.  Plaintiffs plead only conclusory allegations against these individual Defendants.  In their entirety, Plaintiffs' allegations against these Defendants are:  each of these five persons reside in New Mexico and are employed as police officers by the UNMPD [Doc. 11, ¶¶ 93-97, 100], that the five officers acted in the course and scope of their employment and under color of state law [Doc. 11, ¶ 101], that the five

---

[4] Plaintiffs further argue that, because the Regents are a body corporate under NMSA 1978, § 21-7-4, Federal Rule of Civil Procedure 17(b) allows this suit to go forward. [Doc. 26, p. 11]  This argument, like Plaintiffs' NMTCA argument, fails as it does not change the definition of a person under Section 1983.

officers are law enforcement officers as defined by the NMTCA, [Doc. 11, ¶ 103], that they acted individually and in concert and they knowingly and intentionally ignored Plaintiffs' actual innocence in order to gain personal accolades for themselves and notoriety for UNMPD [Doc. 11, ¶ 156].  These conclusory allegations are not sufficient to provide notice to the Defendants of the wrongful acts they allegedly committed.  *See Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." (Internal quotation marks and citation omitted)).

Plaintiffs respond by arguing that their allegations meet the plausibility standard of pleading and the fact that some of their allegations were made "upon information and belief" is insufficient to dismiss.  [Doc. 26, p. 12 n.9]  However, Defendants' issue is not with Plaintiffs' reliance upon an allegation made "upon information and belief," but rather with the failure to state a factual basis "from which it could be plausibly inferred that Defendants Romero, Duren, Santiago, Catanach, and Fox personally participated in Plaintiffs' claimed deprivation of constitutional rights."  [Doc. 17, p. 7]  Defendants are correct:  the *Complaint* fails to identify any action taken by these Defendants, let alone any deprivation of Plaintiffs' constitutional rights.  Accordingly, the *Complaint* fails to state a claim against these Defendants.  *Robbins*, 519 F.3d at 1250 (stating that, in cases against a government agency and several government actors sued in their individual capacities, a complaint must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state").

14

Finally, Plaintiffs argue that "Defendant UNM and the keeper of records have willfully withheld information pertinent to this lawsuit," and that they "will seek leave to amend their complaint to add factual contentions as against Defendants Romero, Duren, Santiago, Catanach, and Fox once it becomes feasible to do so." [Doc. 26, p. 12] As set forth later in this *Opinion*, as to Plaintiffs' Section 1983 claims, even assuming Plaintiffs obtained more information, these Defendants would be granted qualified immunity (like the remaining individual Defendants), and, therefore, the Court will not grant leave for Plaintiffs to amend their complaint to add allegations against these Defendants related to their Section 1983 claims.

The Court having dismissed Plaintiffs' Section 1983 claims against Defendants UNM, Romero, Duren, Santiago, Catanach, and Fox, the remainder of the Court's discussion of this *Motion* [Doc. 16] pertains to only the Section 1983 claims against the five remaining individual Defendants in their individual capacities.

### Count I, Violation of the Equal Protection Clause

The individual Defendants argue that they are entitled to qualified immunity from Plaintiffs' "Equal Protection Claim" (Count I). Accordingly, to survive the claim of qualified immunity, Plaintiffs must both allege a constitutional violation and establish that the Defendants violated clearly established law. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109 (10th Cir. 2008) (applying the qualified immunity analysis to a claim of selective enforcement in violation of the Equal Protection Clause). However, as discussed below, the Court determines that Plaintiffs have failed to allege a constitutional violation, and, therefore, the Court need not address whether Plaintiffs have established

that Defendants violated a clearly established law. *See Kerns v. Bader*, 663 F.3d 1173, 1190 (10th Cir. 2011) (stating that qualified immunity must be granted based on the lack of a constitutional violation "without pausing to address the clearly established law question").

The Equal Protection Clause of the United States "Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. U.S.*, 517 U.S. 806, 813 (1996). To succeed on either a claim of racially selective prosecution or racially selective law enforcement, a plaintiff must "demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003); *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (stating that the elements of selective prosecution and selective enforcement "are essentially the same").

> To satisfy the discriminatory-effect element, one who claims selective enforcement "must make a credible showing that a similarly-situated individual of another race could have been, but was not, [stopped or] arrested for the offense for which the defendant was [stopped or] arrested." . . . And the discriminatory-purpose element requires a showing that discriminatory intent was a "motivating factor in the decision" to enforce the criminal law against the defendant. . . . Discriminatory intent can be shown by either direct or circumstantial evidence.

*Alcaraz-Arellano*, 441 F.3d at 1264 (internal citations and original ellipses omitted).

To demonstrate a discriminatory purpose, Plaintiffs argue that "the conduct, behavior, and statements of the Defendant Officers – coupled with their subsequent actions in wrongfully pursuing the prosecution of the Plaintiffs, regardless of their <u>known</u> innocence, [at the very least] supports an 'inference' of discriminatory purpose." [Doc.

26, pp. 14-15] Plaintiffs argue that the colloquy between various officers, including the admission of attempting to railroad them, is evidence that they knew that Plaintiffs were innocent but they nonetheless falsely charged them and sought their prosecution "with an eye towards individual gain and career advancement." [Doc. 26, p. 15] Plaintiffs also submit that, in the officers' haste to pursue the criminal investigation, they knowingly made the innocent Plaintiffs get a reputable criminal defense attorney; that the officers "doctor[ed] investigative reports," "leaked the case to the media,"[5] and made "[lewd] and disrespectful comments in which they sexualize and dehumanize these black Plaintiffs." [Doc. 11, ¶ 417; Doc. 26, pp. 15-16] Further, in their *Complaint*, Plaintiffs allege that the officers' "animus and racial bias" is demonstrated by Officer Guevara's interview with Spencer in which Officer Guevara allegedly "attempts to alter the accuser's testimony" and a Department of Justice report which concluded that the Commanders, Supervisors and Officers of UNMPD "admit to being undertrained and in most cases, untrained" on how to properly handle sexual assault cases. [Doc. 11, ¶ 335]

Plaintiffs' argument is flawed. First, Plaintiffs fail to plead the first element of their selective enforcement claim, i.e., they fail to plead or argue that "a similarly-situated individual of another race could have been, but was not, arrested or referred for . . . prosecution for the offense for which [they were] arrested and referred," i.e., criminal sexual penetration and kidnapping. *Id.* at 1263 (internal quotation marks and citation

---

[5] While, in their brief, Plaintiffs state that the officers provided Plaintiffs' mug shots to the press rather than images of them in business attire in an attempt to present them as dangerous predators, the only statement actually in the *Complaint* is that the officers "leaked the case to the media." [Doc. 11, ¶ 417; Doc. 26, p. 15]

omitted). This failure alone is fatal to Plaintiffs' equal protection claim. Second and alternatively, Plaintiffs' "evidence" of racial discrimination is based on non sequitur inferences. Even if, as Plaintiffs plead, the individual Defendants knew that Plaintiffs were innocent and falsely charged them anyway, this evidence alone is not sufficient to demonstrate that they did so because Plaintiffs are African American. *See Tong v. New Mexico*, 651 F. App'x 798, 800 (10th Cir. 2016) (unpublished) (holding that the plaintiff's allegation that she is Vietnamese and the federal officials who prosecuted her, the government's witnesses, and her alleged victims were all Hispanic was a "coincidence [which was] far from sufficient to permit a reasonable inference that she was prosecuted on account of her race"); *Blackwell v. Strain*, 496 F. App'x 836, 845-46 (10th Cir. 2012) (unpublished) (holding that an officer's "disturbingly hostile, aggressive, unprofessional, and confrontational demeanor for no apparent reason" was insufficient to demonstrate racial animus; reasoning that "[t]here is no indication [the officer] behaved the way he did, even in part, because [the plaintiff] is black. For all we know, [the officer] behaves in this same manner toward all of the truckers he interacts with at the [point of entry], regardless of their race."); *compare Marshall*, 345 F.3d at 1170-71 (holding that the plaintiff presented evidence of a discriminatory purpose by showing that officer: falsely accused the plaintiff of a crime; unnecessarily noted the plaintiff's race on a citation; had previously been terminated for failing to treat people equally under the law; and the officer's arrest record demonstrated a pattern of discrimination based on race).

Plaintiffs failed to plead either of the elements necessary for their equal protection claim. While Plaintiffs allege unprofessional conduct on the part of the officers, which the Court does not condone, these allegations alone are insufficient to state a claim of violation of their equal protection rights under governing case law. The Court must grant qualified immunity to Defendants as to Count I because Plaintiffs have not pleaded a violation of their constitutional rights.

### Count II, False Arrest and Imprisonment; Count III, Unlawful Detention and Confinement; and Count IV, Unlawful Search and Seizure

Defendants argue that Plaintiffs' Second, Third, and Fourth Counts, all related to the arrest of Plaintiffs,[6] must be dismissed because the arrest warrant affidavits were supported by probable cause and did not contain any false statements or omit any material facts which would have vitiated probable cause. [Doc. 17, pp. 16-18] Defendants submit the arrest warrant affidavits and the arrest warrants for the Court to consider, arguing that they are public records which are referred to in the *Complaint*, and therefore the Court can consider them in deciding Defendants' *Motion to Dismiss*. [Doc.

---

[6] Plaintiffs' Count II is titled "False Arrest and Imprisonment"; Count III is titled "Unlawful Detention and Confinement"; and Count IV is titled "Unlawful Seizure of Plaintiffs; and Unlawful Search of Their Property in Violation of Fourth and Fourteenth Amendments." [Doc. 11, pp. 68-70] Many of the allegations in these three Counts overlap and are conclusory.

Defendants submit that Plaintiffs' Counts II through IV "can properly be considered as a single claim of false arrest in violation of the Fourth Amendment" [Doc. 17, p. 13] and Plaintiffs do not take issue with this analysis. [Doc. 26, p. 17-24] The Court agrees as the claims all appear be based on the arrest of Plaintiffs. (Nowhere does the *Complaint* state facts which support a claim that an unlawful search occurred.) Accordingly, the Court will analyze Counts II through IV together, and, in so doing, determine whether Plaintiffs have stated a claim of false arrest and whether the Defendants are entitled to qualified immunity for such a claim.

17, p. 14 n.5]  Plaintiffs do not dispute the documents' authenticity or argue that the Court cannot or should not consider them; the Court will therefore consider them.  *See GFF Corp.*, 130 F.3d at 1384 (stating that, on a motion to dismiss, the court can consider documents central to a complaint even if not attached or incorporated therein where the documents are indisputably authentic); *Aragón*, 93 F. Supp. 3d at 1287 (considering arrest warrant affidavits whose authenticity was not disputed in considering a motion to dismiss).

"It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit, . . . or to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause."  *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (internal quotation marks and citations omitted).[7]  Where false statements were knowingly or recklessly included in an arrest warrant affidavit, the Court must set aside the false information and determine whether probable cause exists upon a review of the remaining contents of the affidavit.  *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).  Where information was omitted from the affidavit, the Court must determine whether probable cause existed "by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant."  *Id.* (internal quotation marks and citation omitted).

---

[7] While Plaintiffs also cite the Fifth and Fourteenth Amendments to support Counts II, III, and IV, [Doc. 11, ¶¶ 476, 480, 485(c)] the United States Supreme Court holds that the Fourth Amendment analysis is applicable to false imprisonment claims.  *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994).

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988). For purposes of qualified immunity, the Court applies an objective standard: officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

With regard to Plaintiffs Ruff and Crusoe, the search warrant affidavits state as follows. Spencer and two men (identified by name) drove to an off-campus house party. The driver left the vehicle and Spencer and the other male stayed in the vehicle. Three men who had arrived in a blue BMW noticed Spencer and the other man in the vehicle. The three men approached the vehicle and asked "Who's in our [teammates'] car?" after which Spencer and the male exited the vehicle and explained who they were and that they were just sitting and talking. "The males from the BMW immediately draw their attention to [Spencer] and ask [the male] if [Spencer] is his girlfriend." The three men started talking to Spencer and then Ruff put his arm around Spencer and stated, "No, she is coming with us." Spencer, "Ryan Ruff, Crusoe Gongbay and another unknown male [got] inside the BMW and [left] the area." Ryan Ruff was driving and the unknown male was sitting in the back seat with Spencer. The unknown male sexually assaulted Spencer, and the details of the sexual assault are set out in the affidavit. During this sexual assault, Spencer told "Ruff to take her back to the party" and she told the unknown male to stop.

After the unknown male assaulted Spencer, Ruff stopped the vehicle and Gongbay got into the backseat and sexually assaulted Spencer, while Ruff was driving, and again the details of the sexual assault were set out. Ruff then dropped Gongbay and the unidentified male off at an unknown location. Spencer asked Ruff to take her home, and he then drove her to the UNM campus, parked, retrieved a handgun, held it to her head, and told Spencer she would have sex with him as well. Ruff then sexually assaulted Spencer, and the details of the assault were set out. Finally, the affidavits set forth the basis for identifying Ruff and Gongbay. [Doc. 17-1, pp. 2-3; 17-2, pp. 2-3] The arrest warrant affidavit for Plaintiff Edwards identifies Edwards as the previously unidentified male and adds the facts used to determine his identity, but otherwise contains the same material allegations. [Doc. 17-3, pp. 2-3] Based on these allegations, judges issued arrest warrants for all three Plaintiffs. [Doc. 17-1, p. 1; Doc. 17-2, p. 1; Doc. 17-3, p. 1]

Plaintiffs assert that the arrest warrant affidavits left out material information. Plaintiffs assert that, in Spencer's original statement, she said she was abducted from the dorms, but the affidavits state that Plaintiff was abducted from outside of the off-campus house party and omit the fact that there was a discrepancy in the evidence. [Doc. 26, p. 20] Plaintiffs further argue that the affidavits omit: the fact that both Spencer and the male passenger of the first vehicle admitted to having sexual intercourse with each other; that the male passenger told the officers that Spencer had stripped down to her underwear at an earlier gathering and given lap dances to multiple attendees; that the male passenger told the officers that Spencer voluntarily left the dorm with him and another male (the driver) to go to the house party, and when they arrived Spencer first performed fellatio on

the driver while the male passenger, also in the vehicle, giggled; that the male passenger told the officers that Spencer first encountered Plaintiffs and a fourth person outside the house party; and that the male passenger informed the officers that Spencer "intercepted the four black males and engaged them in conversation and friendly banter as they walked by the . . . vehicle [he and Spencer had been in]."  [Doc. 26, pp. 20-21]  Finally, Plaintiffs argue that the affidavits should have contained the information that, "[d]uring the course of the friendly and spirited conversation, Ms. Spencer engaged in lewd and suggestive behavior towards the Plaintiffs including specific sexually charged comments directed at the Plaintiffs, indicating her desire to go with them to Plaintiff Gongbay's residence since she was 'bored.'"  [Doc. 26, pp. 20-21]

As an initial matter, it is clear that the statements in the affidavits themselves are sufficient to establish probable cause that each of the Plaintiffs sexually assaulted Spencer.  As set out in the affidavits, Spencer, the alleged victim, was the only witness to the assaults other than Plaintiffs.  Nonetheless, her statements alone were sufficient to create probable cause.  Several cases establish that where probable cause supports an arrest warrant, an officers' failure to investigate potential problems in the victim's or witness's statements does not violate the Fourth Amendment.  *See Easton v. City of Boulder, Colo.,* 776 F.2d 1441, 1449 (10th Cir. 1985) ("[W]hen examining informant evidence used to support a claim of probable cause for a warrant . . . the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness."); *Barham v. Town of Greybull Wyo.,* No. 10-CV-261-D,

2011 WL 2710319, at *11 (D. Wyo. July 11, 2011) ("Plaintiff has not cited a single case, nor is the Court aware of one, holding that a police officer cannot rely on the statements of alleged victims obtained during personal interviews to establish probable cause."), *aff'd sub nom. Barham v. Town of Greybull Wyoming*, 483 F. App'x 506 (10th Cir. 2012) (unpublished) (holding that probable cause existed to support arrest warrant affidavit and rejecting argument that officer failed to conduct an adequate investigation into minor's claims of sexual assault before preparing affidavits*).*

Next, the Court considers whether inclusion of the omitted information would have destroyed probable cause. The Court will consider the facts that Plaintiffs claim were wrongly omitted from the affidavits in four categories for the purpose of analysis. The first category of facts pertains to evidence that Spencer encountered the Plaintiffs for the first time outside the house party, although she originally stated that she was taken from the dorm rooms.[8] If the fact that Spencer had allegedly made an earlier, inconsistent statement had been included in the affidavits, it would have demonstrated only that there was an inconsistency in her account. This inconsistency alone does not negate probable cause that the sexual assault occurred. *See Hopper v. Fenton*, 665 F. App'x 685, 687 (10th Cir. 2016) (unpublished) (holding that probable cause based on alleged victims' claims of sexual assault survived the victims' recantation of their claim that the perpetrator also assaulted a third girl; stating "probable cause survives this sort of contradictory statement regarding incidents separate from the alleged crime").

---

[8] Plaintiffs have not clearly pleaded whether the inconsistency is between Spencer's version of events and the male passenger's version of events, or between Spencer's initial and subsequent telling of the events, or both.

The second category of facts pertains to Spencer's purported sexual acts with others prior to her encounter with the Plaintiffs, including her stripping and lap dances and sexual act with the driver of the first vehicle and the male passenger. The Court concludes that the inclusion of these facts would not have destroyed probable cause. Evidence of prior consensual sexual activity does not establish that later sexual activity is consensual. *See Dixon v. Hartley*, No. 13-cv-02174-MSK, 2014 WL 4265832, *9 (D. Colo. 2014) ("Applicant has failed to explain how evidence of the victim's prior consensual sexual activity [with another person] was relevant to his defense that he and the victim engaged in consensual sexual intercourse. Stated otherwise, the evidence did not tend to disprove that he sexually assaulted the victim."); *Chodkowski v. City of New York*, No. 06 CV 7120 LBS, 2007 WL 2717872, *6 (S.D.N.Y. Sept. 11, 2007) (unpublished) ("Even assuming that [the alleged victim] was lying about the rape itself, she may not have wanted matters to go as far as plaintiffs allege they did, in which case this would constitute a sexual assault hinging on the extent, if any, of consent, and arguable probable cause to arrest still would have existed."). Accordingly, the failure of the officers to include these facts in the affidavits does not destroy probable cause.

The third category includes those facts related to Spencer's actions toward Plaintiffs, including that Spencer "intercepted" Plaintiffs, that she engaged in friendly and spirited conversation with them, and that she "engaged in lewd and suggestive behavior towards the Plaintiffs including specific sexually charged comments directed at the Plaintiffs." [Doc. 26, p. 21] However, inclusion of these facts would not have destroyed

probable cause, because, again, consent may end and evidence of prior consensual sexual or flirtatious activity does not negate a claim of sexual assault. *See id.*

Finally, the fourth category consists of evidence that Spencer voluntarily went with Plaintiffs, i.e., she stated she wanted to go to Gongbay's residence since she was "bored." [Doc. 26, p. 21] Though Plaintiffs' argument is not clearly articulated, Plaintiffs appear to believe that this fact destroys the probable cause to support the kidnapping charge. Plaintiffs view is not necessarily consistent with the theory of kidnapping as charged. The affidavits do not state that Plaintiffs took Spencer from outside the party against her will; indeed, the affidavits state that "[Spencer], Ryan Ruff, Crusoe Gongbay and [SaQwan Edwards] get inside the BMW and leave the area." [Doc. 17-1, p. 3] This neutral statement does not require the conclusion that Spencer left with Plaintiffs against her will.[9] Subsequently, the affidavit states that, when Edwards started to "touch [Spencer] all over her body," Spencer told "Ryan Ruff to take her back to the party." [Doc. 17-1, p. 3] According to the affidavit, Ruff did not do so, nor did he or the other Plaintiffs free Spencer. Instead, Ruff drove to another location at which Gongbay got into the backseat with Spencer and sexually assaulted her, and then Ruff took Spencer to a location on UNM campus and purportedly assaulted her. [Doc. 17-1, p. 3] While the affidavits allow for the inference that Spencer voluntarily got into the vehicle, it is clear that she was kept with Plaintiffs against her will once she asked to be taken back to the

---

[9] Alternatively, one could infer that Spencer was forced to leave with Plaintiffs because the arrest warrant affidavit stated that Ruff put his arm around Spencer and said "No she is coming with us." [Doc. 17-1, pp. 2-3] Whether this alone supports probable cause for the kidnapping is not at issue, however, given the subsequent statements in the arrest warrant affidavit.

party and Ruff drove her elsewhere instead. Thus, the affidavits contain facts establishing that it was after Spencer got into the vehicle with Plaintiffs that Plaintiffs restrained, confined or transported Spencer by force or intimidation to inflict a sexual assault on her. NMSA 1978, § 30-4-1(A) (2003) ("Kidnapping is the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent: . . . (4) to inflict death, physical injury or a sexual offense on the victim."). Thus, even if Spencer told the Plaintiffs she wanted to go to Gongbay's residence because she was bored, inclusion of this fact in the affidavits would not have destroyed probable cause based on these later facts supporting the kidnapping charges. *See State v. Foster*, 1999-NMSC-007, ¶ 32, 974 P.2d 140 (stating that "the key to the restraint element in kidnapping is the point at which the victim's physical association with Defendant was no longer voluntary" (internal brackets, quotation marks, and citation omitted)), *abrogated on other grounds by State v. Frazier*, 2007–NMSC–032, ¶¶ 31, 35, 164 P.3d 1; *State v. Pisio*, 1994-NMCA-152, ¶ 30, 889 P.2d 860 ("Once Defendant restrained Victim by force or coercion for service against her will, the crime of kidnapping occurred."); *State v. Mares*, 1991-NMCA-052, ¶¶ 2, 20, 812 P.2d 1341 (stating that the facts necessary to prove that the victim was held against her will could have arisen after she voluntarily left a bar with the defendant, when she first realized the defendant might harm her, after which he drove her to another location and attempted to rape her).

Accordingly, Plaintiffs have not alleged facts which demonstrate that Defendants included false statements in the affidavits or omitted information which, if it had been

included, would have vitiated the probable cause established by the affidavits. The Court

does not consider whether the omission was reckless or knowing because their omission

does not destroy probable cause.[10]   Because Plaintiffs have not demonstrated a

constitutional violation, Defendants must be granted qualified immunity on Plaintiffs'

Second, Third, and Fourth counts.

### *Count VI, Malicious Prosecution, and Count VIII, Concealment of Evidence*

In Count VI, Plaintiffs bring a claim of malicious prosecution, and in Count VIII,

Plaintiffs bring a claim of "concealment of evidence."

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).   While an initial

seizure may be challenged by a claim of false arrest or false imprisonment, "[a]fter the

institution of legal process, any remaining constitutional claim is analogous to a

malicious prosecution claim." *Mondragon v. Thompson*, 519 F.3d 1078, 1083 (10th Cir.

2008).

---

[10] Plaintiffs make another argument which the Court summarily rejects. Plaintiffs equate the omission of facts with perjury and argue that the case law thus requires the Court to find a Fourth Amendment violation. [Doc. 26, pp. 22-24] This argument misconstrues case law in many ways, one of which is that, even if there were an intentional misstatement, the Court would still have to apply the qualified immunity analysis. *See, e.g., Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004) (analyzing whether qualified immunity must be granted given claim of omission of facts from affidavit); *Wolford*, 78 F.3d at 489 (same); *Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015) (same).

Defendants move to dismiss the malicious prosecution claim because the officers had probable cause to arrest Plaintiffs and they had no independent duty to investigate the Plaintiffs' claims of innocence, citing *Spalsbury v. Sisson*, 250 F. App'x 238, 246 (10th Cir. 2007) (unpublished) (holding that, once officers had probable cause to arrest plaintiff, neither they nor the sheriff had an "independent duty to investigate his every claim of innocence").

To support their claim for malicious prosecution, Plaintiffs allege:

501. Defendants knowingly, willfully, [and] intentionally failed to properly investigate; allowed evidence to disappear; be destroyed; spoliate; altered witness testimony; fabricated evidence; and despite knowledge of the Plaintiff[s'] actual *innocence*, pursued prosecution against the (3) three *innocent* African American Plaintiffs.

502. Defendants knowingly, willfully, [and] intentionally submitted an Official Report of their haphazard and racially biased criminal 'investigation' to the Office of the District Attorney for the State of New Mexico, with the knowledge that this Official Report would be used to advance and perpetuate the criminal process against the Plaintiffs.

503. Notwithstanding, Defendants knowingly, willfully, and intentionally submitted the Report, intending to have the (3) three *innocent* African American Plaintiffs indicted and convicted on charges of kidnapping and rape.

[Doc. 11] To support their claim for concealment of evidence, Plaintiffs allege:

522. Defendants UNMPD and their employees acting individually and in concert, conspired to provide its Official Offense Report to the office of the District Attorney for the State of New Mexico for review for prosecution, with the intent that the (3) three *innocent* African American Plaintiffs be indicted and prosecuted on the charges of kidnapping and rape.

523. As described herein, Defendants UNM['s] and UNMPD Officers['] intentional concealment of evidence, failure to secure evidence, and alteration of evidence[] was intended to obfuscate evidence of the

Plaintiffs['] actual innocence from their attorneys, the District Attorney, and the Court.

[Doc. 11]

In addition, in their *Response Brief*, to support their malicious prosecution claim, Plaintiffs argue that "Defendants **continued** to pursue the case against Plaintiffs even after they had received all of the exculpatory evidence from Plaintiffs' attorneys, and thus, *knew* without a shadow of a doubt that Plaintiffs were innocent." [Doc. 26, p. 25] Plaintiffs also point to the recorded conversation between various officers in which one officer told the others that they were trying to railroad Plaintiffs, which no one present denied. [Doc. 26, p. 25] With regard to their concealment of evidence claim, Plaintiffs argue that their evidence includes: Defendant Guevara's "obvious attempts" to induce Spencer to alter her statement as to where she first encountered Plaintiffs; Defendants' interviews with the male passenger and others concerning Spencer's "sexually charged conduct at a dorm party on the night of the alleged incident[] and multiple[] consensual sexual acts occurring on the same night and prior to the alleged incident;" that Defendants received the Snapchat videos which purportedly show that the "sexual conduct was undoubtedly consensual;" Defendants' "omissions of material facts from their Affidavits for Arrest Warrant"; "Defendants' refusal to investigate further upon receipt of facts and evidence tending to controvert" Spencer's allegations; and "Defendants' omissions of material facts and evidence from their report submitted to the District Attorney's Office." [Doc. 26, pp. 25-26]

As an initial matter, with regard to the claim styled as "concealment of evidence," precedent in our Circuit has recognized that the concealment of exculpatory evidence by an investigatory official supports a claim for malicious prosecution. *Pierce*, 359 F.3d at 1287-88 (holding that the plaintiff stated a cause of action for malicious prosecution against a state chemist who, after the plaintiff was charged, supplied false information and disregarded accurate exculpatory information). Thus, the Court will analyze the facts alleged to support the concealment of evidence claim along with the other facts which Plaintiffs point to regarding their malicious prosecution claims.

As set forth in *Mondragon*, any actions taken by Defendants prior to Plaintiffs' arrest are properly analyzed as a claim for false arrest, while actions taken thereafter are properly analyzed using the elements of the claim of malicious prosecution. *Mondragon,* 519 F.3d at 1083. This is because a neutral magistrate made the determination that probable cause existed to arrest Plaintiffs, and, in arresting Plaintiffs, the officers were carrying out their duty to execute a judicial order and cannot be held liable for doing so. *See id.* at 1083-84. The actions identified by Plaintiffs which identifiably occurred prior to their arrests include Defendants' interview of the male witness and their failure to include his statements regarding Spencer's "sexually charged" actions earlier that evening in the Affidavits for Arrest Warrants along with other purported omissions from the Affidavits for Arrest Warrants. The Court considered these purported failings in analyzing the claim of false arrest, and concluded that they failed to support the claim. These purported failings do not support the claim of malicious prosecution for several

reasons, including because they do not destroy probable cause. *Novitsky*, 491 F.3d at 1258 (stating that lack of probable cause is an element of malicious prosecution).

Plaintiffs fail to state a clear timeline or allege the dates of Defendants' purported failings. However, even assuming that the remaining events occurred after Plaintiffs' arrest, the actions do not support Plaintiffs' claim for malicious prosecution. With regard to witness interviews, it is clear that none of the other witnesses were in the vehicle with Plaintiffs and Spencer at the time of the purported sexual assaults and kidnapping, and, therefore, their statements would not have destroyed probable cause. With regard to Plaintiffs' claim that Defendants omitted material facts and evidence from the report to the District Attorney's Office, the only omitted fact identified by Plaintiffs was the Officers' conversation that it was "none of the other guys," just Crusoe, and that they were trying to railroad the Plaintiffs. [Doc. 11, ¶¶ 59-65] These statements are not evidence, nor would they have destroyed the probable cause supporting continued prosecution. The recorded statements do not contradict Spencer's claims as set forth in the Affidavits for Arrest Warrant. Nor do the statements, absent some evidence or explanation, support Plaintiffs' oft-repeated argument that the Officers believed that Plaintiffs, or at least two of them, were innocent. Further, Plaintiffs did not plead the evidentiary basis for such "knowledge." If there was some evidentiary basis for this claim, and if that evidence was excluded from the report to the District Attorney's Office, the Court could consider whether the omitted evidence caused Plaintiffs' continued confinement, whether it destroyed probable cause for the continued prosecution, and whether Defendants acted with malice (the first, third and fourth elements of the claim

for malicious prosecution). *Novitsky*, 491 F.3d at 1258. In this case, however, the officers' unexplained conversation is not a fact which, if included in the report, would have been likely to terminate the prosecution of Plaintiffs.

Plaintiffs plead that Snapchat recordings were the "linchpin that proved that the accuser[] prevaricated regarding her claims of being abducted and 'gang raped.'" [Doc. 11, ¶ 382] Nonetheless, Plaintiffs do not plead facts necessary for the Court to conclude that Defendants did anything after receipt of the evidence which would support Plaintiffs' malicious prosecution claim. Plaintiffs do not allege 1) to whom they disclosed the videos (i.e., the assistant district attorney or the officer Defendants), or 2) the date that such evidence was provided to Defendants. Thus, as pleaded, it is not clear that the officer Defendants failed to provide the evidence to the assistant district attorney so he or she could evaluate the impact of the evidence on probable cause. Unless they failed to turn the evidence over to the prosecutor, who would be the party responsible for deciding whether or not to continue to prosecute Plaintiffs, Plaintiffs cannot establish that Defendants were responsible for Plaintiffs' continued prosecution. Further, because Plaintiffs do not plead the date they provided the evidence to Defendants (if ever), Plaintiffs have not pleaded that they were subject to further prosecution after the evidence was provided to Defendants.[11] Accordingly, Plaintiffs' allegations pertaining to the Snapchat recordings fail to establish the first, third and fourth elements of Plaintiffs'

---

[11] At best, it is clear that Officer Guevara had seen the video evidence before June 26, 2014, when he interviewed Spencer and, based on the video evidence, purportedly attempted to get her to change her statement. However, Plaintiffs do not plead the date that their charges were dismissed. [Doc. 11, ¶ 293]

malicious prosecution claim. *Novitsky*, 491 F.3d at 1258 (stating the elements of malicious probable cause as including: "(1) the defendant caused the plaintiff's continued confinement or prosecution; . . . (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; [and] (4) the defendant acted with malice").

As to the claim that Defendant Guevara attempted to induce Spencer to change her statement to say that she did not first encounter Plaintiffs at the dorms, this allegation also fails to support the claim for malicious prosecution. While Spencer's inaccurate claim of where she first met Plaintiffs would be useful to a jury in measuring her credibility, it would not affect the evidence establishing probable cause, i.e., Spencer's claim that she was sexually assaulted. Accordingly, this act by Defendant Guevara did not cause Plaintiffs' continued prosecution.

Finally, though Plaintiffs do not mention in their *Response Brief* their allegations regarding the spoliation of video evidence and the disappearance of witnesses, the Court addresses these allegations made in the *Complaint*. The purported spoliation of evidence does not support the malicious prosecution claim because, having been presented with sufficient evidence to establish probable cause, the officer Defendants were not under a duty to continue to investigate to find exculpatory evidence. *See Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995) (holding that once probable cause to arrest existed, officers did not violate arrestee's Fourth Amendment rights by failing to investigate arrestee's alibi witnesses).

In sum, Plaintiffs have not pleaded sufficient factual allegations to demonstrate a constitutional violation, specifically, malicious prosecution, and thus the individual Defendants must be granted qualified immunity with respect to Counts VI and VIII.

### Count V, Conspiracy; Count VII, Refusing or Neglecting to Prevent; Count IX, Supervisory Violation; and Count X, Negligent Hire, Supervision, Training, Discipline, and Retention by UNM and UNMPD

Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 styled as: Count V, "Obstruction of Justice and Conspiracy"; Count VII, "Refusing or Neglecting to Prevent"; Count IX, "Supervisory Violation; and (*Monell v. Dep't of Social Servs., 436 U.S. 658 (1977)*) (*sic*)"; and Count X, "Negligent Hire; Supervision; Training; Discipline; & Retention by UNM and UNMPD." [Doc. 11, pp. 72, 75, 79, 89]

Defendants argue, and Plaintiffs do not dispute, that to state any of these claims Plaintiffs must have identified an underlying constitutional violation by one of the individual Defendants. Defendants further argue that Plaintiffs have not done so, and therefore Plaintiffs' claims for each of these causes of action fails. [Doc. 17, pp. 23-26] Defendants are correct.

In order to succeed on a conspiracy claim, a plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995). As discussed above, Plaintiffs have failed to allege a constitutional violation and therefore their conspiracy claim must be dismissed. *Id.* (stating that the plaintiff's conspiracy claim failed because the plaintiff failed to establish an essential element of the claim: "any constitutional violations"). Thus, Plaintiffs' Fifth Count must be dismissed.

Plaintiffs' remaining Section 1983 claims (to the extent they have been recognized) are against the supervisors but, again, are dependent on a constitutional violation by one of the individual Defendants.

> A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *See Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is well established, therefore, that a municipality cannot be held liable under section 1983 for the acts of an employee if a jury finds that the municipal employee committed no constitutional violation. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam); *Webber v. Mefford*, 43 F.3d 1340, 1344–45 (10th Cir.1994); *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir.1988).

*Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." (Internal brackets, quotation marks, and citation omitted)).   Accordingly, Plaintiffs' Seventh, Ninth and Tenth Counts must be dismissed.

## MOTION TO DISMISS STATE LAW TORT CLAIMS [Doc. 18]

### *New Mexico Tort Claims Act*

Pursuant to the NMTCA, the State of New Mexico waives immunity for, *inter alia*, claims of false arrest, false imprisonment, malicious prosecution, and abuse of process "caused by law enforcement officers while acting within the scope of their duties."  NMSA 1978, § 41-4-12 (1976).  Absent circumstances not argued here, under the NMTCA, "the doctrine of respondeat superior extends liability to the public entities

that have supervisory control over the tortious actors." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 14, 916 P.2d 1313.

### Count XI, False Arrest and False Imprisonment

In Count XI, Plaintiffs bring claims of false arrest and false imprisonment against all Defendants pursuant to the NMTCA. [Doc. 11, p. 92] To prove false imprisonment under New Mexico common law, "there must be evidence or a reasonable inference of unlawful interference with the personal liberty or freedom of locomotion of another," such as an arrest. *Perea v. Stout*, 1980-NMCA-077, ¶ 41, 613 P.2d 1034 (internal quotation marks and citation omitted). "The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so. . . . A false arrest is merely one way of committing false imprisonment." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 173 P.3d 6 (internal citations omitted). "If . . . the defendants [have] reasonable cause to restrain plaintiffs, then plaintiffs' suit for false imprisonment fails." *Diaz v. Lockheed Elecs.*, 1980-NMCA-140, ¶ 4, 618 P.2d 372.

Within Count XI, Plaintiffs allege that the institutional Defendants "breached their duty by failing to adequately investigate criminal claims of sexual assault made against the African American Plaintiffs in a timely, efficient, or proper manner"; that the institutional Defendants acted with the intent to confine Plaintiffs; and that Defendants knew or should have known that disobeying policies and procedures or failing to properly investigate the allegations against Plaintiffs would "prejudice any full, fair, complete, unbiased, competent and professional investigation." [Doc. 11, ¶¶ 603, 604, 606]

Plaintiffs allege that Defendants failed to perform a competent investigation. [Doc. 11, ¶ 607] Finally, Plaintiffs allege that, as a result of Defendants' conduct, Plaintiffs are entitled to damages for battery, wrongful detention and imprisonment, emotional distress, harm to their reputations, loss of dignity, stolen identity, loss of past and present income, and loss of earning capacity. [Doc. 11, ¶ 608]

Comparing Plaintiffs' allegations within Count XI to the elements of a claim under New Mexico law for false arrest or false imprisonment, the only allegation related to the stated claim is that Defendants acted with the intent to confine Plaintiffs. However, within Count XI, Plaintiffs entirely fail to claim that they were arrested without probable cause. [Doc. 11, ¶¶ 597-609] Though this count lists a miscellany of legal terminology, the result is a morass unrelated to the legal theory alleged, which, in the end, fails to plead *facts* relevant to the elements of the claim.

> [C]omplaints like the one in this case unfairly burden defendants and courts. The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. In this case, for example, plaintiffs have essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two.

*D.J. Young Pub. Co., LLC ex rel. Young v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, No. 12-CV-2011-KHV, 2012 WL 4211669, *3 (D. Kan. Sept. 18, 2012), *aff'd sub nom. Young v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 520 F. App'x 636 (10th Cir. 2013) (unpublished).

Despite Plaintiffs' failure to identify the factual basis of their state tort claims of false arrest and false imprisonment within Count XI, elsewhere in the *Complaint* Plaintiffs claim that the individual officers arrested Plaintiffs absent probable cause. [*E.g.,* Doc. 11, ¶¶ 409, 417] However, as the Court held with regard to Plaintiffs' claim of false arrest and imprisonment pursuant to 42 U.S.C. § 1983, the arrest warrants stated probable cause for the arrest of Plaintiffs and the individual Defendants did not omit material facts from the arrest warrant affidavits which would have destroyed probable cause. Accordingly, Plaintiffs have failed to state a claim for false arrest or false imprisonment under New Mexico law. *Santillo*, 2007-NMCA-159, ¶ 12 ("An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest.") Count XI shall be dismissed.

### Count XV, Malicious Prosecution; and Count XVI, Malicious Abuse of Process

In Count XV, Plaintiffs allege malicious prosecution against all Defendants. [Doc. 11, ¶¶ 641-646] In Count XVI, Plaintiffs bring a claim of malicious abuse of process against all Defendants. [Doc. 11, ¶¶ 647-652] The Court addresses the malicious abuse of process claim first.

Malicious abuse of process is a tort first recognized in New Mexico in *DeVaney v. Thriftway Marketing Corporation*, 1998-NMSC-001, ¶ 17, 953 P.2d 277, *overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, ¶ 29, 204 P.3d 19. The *DeVaney* Court considered the elements of the traditional common law torts of malicious prosecution and abuse of process and concluded that, given evolving case law, there was

so little difference between the two torts that it was difficult to distinguish the two claims.

*Id.* ¶ 13. Accordingly, the Court combined the two torts into a single tort, named that tort malicious abuse of process, and set forth the elements of the new tort. *Id.* ¶ 17. However, the Court thereafter revised the elements, stating:

> We leave in place the combined tort of malicious abuse of process, but restate its elements as follows: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) "an irregularity or impropriety suggesting extortion, delay, or harassment[,]" or other conduct formerly actionable under the tort of abuse of process.

*Durham v. Guest*, 2009-NMSC-007, ¶ 29.[12]

In arguing that they have stated a claim for malicious abuse of process, Plaintiffs state: "The use of criminal process to secure a false indictment is 'irregular' and 'improper' use of process." [Doc. 29, p. 14] Plaintiffs further argue that they have pleaded facts which "show that Defendants had a primary motive to secure their false arrest, conviction, and imprisonment – knowing they lacked probable cause." [Doc. 29, p. 14] Plaintiffs identify no irregular use of process other than their claim of lack of probable cause.

---

[12] The NMTCA's waiver of immunity for enumerated acts by law enforcement officers lists "malicious prosecution" and "abuse of process," but not malicious abuse of process. NMSA 1978, § 41-4-12 (1977). This Section was enacted prior to the New Mexico Supreme Court's combination of the torts of malicious prosecution and abuse of process (in 1997), and the Court concludes that it would not be consistent with the legislative intent behind the statute to construe Section 41-4-12 as not waiving immunity for the new, combined cause of action.

As analyzed above, the Court concludes that Plaintiffs have failed to plead facts demonstrating that Defendants lacked probable cause to secure the arrest warrants against Plaintiffs. Accordingly, Plaintiffs have failed to plead facts demonstrating an essential element of the cause of action for malicious abuse of process, i.e., "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge." *Durham*, 2009-NMSC-007, at ¶ 29 (stating that filing a complaint absent probable cause is one type of improper use of process). Thus, Plaintiffs' claim for malicious abuse of process must be dismissed.

Though, under New Mexico common law, the tort of malicious prosecution no longer exists and is subsumed within the tort of malicious abuse of process, Plaintiffs assert a novel argument for their separate claim of malicious prosecution. Plaintiffs argue that their malicious prosecution claim is based on a criminal statute, titled "Malicious criminal prosecution," which states in full:

> Malicious criminal prosecution consists of maliciously procuring or attempting to procure an indictment or otherwise causing or attempting to cause a criminal charge to be preferred or prosecuted against an innocent person, knowing him to be innocent.

> Whoever commits malicious criminal prosecution is guilty of a misdemeanor.

NMSA 1978, § 30-27-1 (1963). [Doc. 29, p. 12]

Not only does *DeVaney* (which restated the tort of malicious prosecution into the tort of malicious abuse of process) not address Section 30-27-1, no reported case construes the statute. Clearly *DeVaney* did not judicially abrogate the misdemeanor created in Section 30-27-1, and thus the crime, which pre-dates *DeVaney*, continues to

exist. The question is whether Section 30-27-1 creates a tort separate from what used to be malicious prosecution but is now considered malicious abuse of process. [Doc. 29, p. 12] Based on the language and history of the NMTCA and Section 30-27-1, the Court concludes it does not.

As stated above, the NMTCA was enacted in 1976 and listed enumerated torts for which New Mexico waived immunity when those torts were committed by a law enforcement officer acting in the scope of his or her duty. Section 41-4-12. The then-separate torts of malicious prosecution and abuse of process were among those torts expressly recognized. Since well before enactment of the NMTCA, the tort of malicious prosecution existed in New Mexico. To prove malicious prosecution with regard to a criminal proceeding, a plaintiff was required to prove that the complaint lacked probable cause, the criminal action terminated in his or her favor, and the criminal action was brought with malice, i.e., intentionally and without legal justification. *Marchbanks v. Young*, 1943-NMSC-024, ¶¶ 13, 21, 139 P.2d 594. "In an action for wrongful prosecution of criminal proceedings the impropriety of the defendant's purpose becomes material only when lack of probable cause is proved." *Id.* ¶ 18 (quoting 3 Restatement (Second) of Torts, 669A, p. 427).

In 1963, the New Mexico Legislature adopted the criminal statute of "malicious criminal prosecution." The elements of the statute are that the defendant: a) maliciously, b) procured or attempted to procure an indictment or "otherwise cause[d] . . . a criminal charge to be preferred or prosecuted," c) against an innocent person, and d) the defendant knew the prosecuted person was innocent. Section 30-27-1. This statute differs from the

42

common law tort in at least two significant respects: first, the elements are significantly different, including the significantly more onerous burden of proving the prosecuted person is innocent and the prosecuting person knew the person was innocent; and second, there is a criminal penalty for violation of the statute.

Given this history, the Court does not believe the New Mexico Legislature intended to waive liability for "malicious criminal prosecution" in addition to the waiver for the tort of malicious prosecution. First, the enumerated list does not include malicious criminal prosecution. Because the Court presumes the Legislature was aware of the law at the time it enacted the NMTCA, it is significant that the Legislature did not list "malicious criminal prosecution." Second, there was simply no need to include malicious criminal prosecution within Section 41-4-12 given inclusion of the tort of malicious prosecution, which carried a significantly lower evidentiary burden. A person would generally prove the tort of malicious prosecution in proving malicious criminal prosecution.

Alternatively, even if the Court were to conclude that the Legislature waived immunity for malicious criminal prosecution, Plaintiffs have not pleaded facts which would prove the elements of the case, particularly the legal conclusion that any Defendant knew Plaintiffs were innocent. Although Plaintiffs repeatedly allege that Defendants "knew and/or had reason to believe that at least (2) two of [the] African American Plaintiffs were indeed, *innocent*" [Doc. 11, ¶ 47], the factual allegations in the *Complaint* do not demonstrate that any Defendant knew the Plaintiffs, or two of them, to be innocent. Plaintiffs' factual basis includes Defendant Guevara's statements that "'It's

all Crusoe, it's none of these other guys, you know. . .' 'But, [i]f we can put them all together, especially Crusoe. . . . If Crusoe's got several charges over his head, that guy's going to sing like a bird. They all know him by name.'" [Doc. 11, ¶¶ 142, 273, 288] However, the *Complaint* does not identify the facts upon which this belief was based. Moreover, in light of the fact that the Affidavits for Arrest Warrant were based on probable cause, and in light of the fact that Plaintiffs have not identified any information which, if included in the Affidavits, would have destroyed probable cause, Defendant Guevara's vague statement alone can only be read as an unsupported statement of personal belief. *Iqbal* itself identifies allegations that a defendant "knew of, condoned, and willfully and maliciously agreed" to a certain course of conduct as conclusory and "bare assertions . . . [which] amount to nothing more than a formulaic recitation of the elements." *Iqbal*, 556 U.S. at 680-81 (internal quotation marks and citation omitted). Formulaic recitations of the elements are "not entitled to be assumed true." *Id.* at 681. As such, Plaintiffs' *Complaint* fails to allege facts demonstrating that Defendants knew Plaintiffs were innocent but Defendants prosecuted them anyway.

Accordingly, for the above reasons, the Court holds that Plaintiffs have not stated a claim for malicious prosecution or malicious abuse of process. Counts XV and XVI will be dismissed.

### Count XVII, Intentional Infliction of Emotional Distress; and Count XII, Denial of Due Process

In Count XVII, Plaintiffs bring a claim for intentional infliction of emotional distress. [Doc. 11, ¶¶ 653-657] However, Plaintiffs now correctly concede that New

44

Mexico has not waived sovereign immunity for claims of intentional infliction of emotional distress. [Doc. 29, p. 15 n.8] As such, Count XVII will be dismissed.

In Count XII, Plaintiffs bring a claim of "Denial of Due Process under the New Mexico Tort Claims Act." [Doc. 11, ¶¶ 610-617] Among other things, Plaintiffs allege that the institutional Defendants "used their Peace Officers to interfere with the Plaintiff[s'] property [interests] and their liberty interests," and that the individual Defendants "ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, intimidate, punish and bully" Plaintiffs.[13] [Doc. 11, ¶¶ 612-613]

Defendants correctly note [Doc. 35, p. 1 n.1] that Plaintiffs fail to address this claim in their *Response Brief.* [Doc. 29] The Court has reviewed the claim and concludes that it should be dismissed for the failure to state a claim. The Fourteenth Amendment protects citizens against state actions that deprive them of life, liberty, or property without due process of law. U.S. Const. Amend. XIV. "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007). Other than their allegation that they were seized without probable cause, Plaintiffs do not identify the procedural or substantive due process requirements they claim they were

---

[13] Plaintiffs also allege, within their claim for denial of due process, that Defendants failed "to properly, thoroughly and/or adequately investigate criminal claims of sexual assault made against" Plaintiffs "in a timely, efficient, or proper manner." [Doc. 11, ¶ 614] However, Plaintiffs also bring a claim of "Negligence - Failure to Investigate and/or Inadequate Investigation" in Count XIV. [Doc. 11, ¶¶ 629-640] Accordingly, the Court addresses this allegation within the context of Plaintiffs' Failure to Investigate claim.

denied. However, the Fourteenth Amendment does not apply to claims of search or seizure absent probable cause. *Albright*, 510 U.S. at 274-75. As to substantive due process, the Supreme Court has held that the Fourteenth Amendment's substantive due process clause does not protect an individual from an unreasonable search and seizure – rather, that protection lies in the Fourth Amendment. *Id.* Our Tenth Circuit reached the same conclusion regarding "procedural due process claim[s] based on pre-trial deprivations of physical liberty," and held that the Fourteenth Amendment does not offer protection beyond that found in the Fourth Amendment. *Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007). Accordingly, as there is no legal basis for Plaintiffs' claims as set forth in Count XII, this Count must be dismissed.

### Count XIV, "Negligence – Failure to Investigate and/or Inadequate Investigation"

In Count XIV, Plaintiffs bring a claim styled as "Negligence – Failure to Investigate and/or Inadequate Investigation" against all Defendants. [Doc. 11, ¶¶ 629-640] Therein, Plaintiffs allege that Defendants owed them a duty of reasonable care to conduct a fair, reasonable and adequate investigation, and that Defendants breached that duty. Plaintiffs allege that Defendants breached this duty by failing to interview witnesses, failing to obtain, review, and preserve video surveillance footage, and failing to provide that footage "to Plaintiffs for the purpose of preparing a defense to the charges levied" against them.[14] [Doc. 11, ¶ 632] Plaintiffs also allege that Defendants acted

---

[14] Plaintiffs also allege "Officer Guadalupe Pete Guevara and other UNMPD Officers, acting under the color of state law, failed to appear for pre-trial interviews and failed to properly investigate the alleged sexual assault, deprived the (3) three *innocent* African

"deliberately, wantonly and maliciously" by failing to properly investigate the alleged sexual assault. [Doc. 11, ¶ 636]

Defendants argue, among other things, that New Mexico has not waived immunity for Plaintiffs' negligent failure to investigate claim. Defendants recognize that a New Mexico statute declares it

> to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken[.]

NMSA 1978, § 29-1-1 (1979). Further, Defendants acknowledge that the New Mexico Supreme Court recognized "that Section 29-1-1 created a duty that accrues to the benefit of specific individuals—i.e., that it creates an individual right." *California First Bank v. New Mexico*, 1990-NMSC-106, ¶ 35, 801 P.2d 646. [Doc. 19, p. 7] The *California First Bank* Court held that sheriff's deputies, who had observed a drunken man creating a disturbance at a bar but failed to apprehend him before he drove off and killed three

---

American Plaintiffs of their Sixth Amendment rights to confront their accusers and violated the Fourth Amendment of the United States Constitution to be free from unlawful searches and seizures without probable cause." [Doc. 11, ¶ 633] Plaintiffs also allege that "the negligent supervision of and negligent investigation by Defendants UNM and UNMPD personnel caused a loss of evidence necessitating the prolonging of the charges levied against the Plaintiffs and a further prolonging of the negative media coverage referring to the (3) three *innocent* African American Plaintiffs as 'rapists.'" [Doc. 11, ¶ 638] The Court addresses the seizure without probable cause and negligent supervision claims elsewhere in this *Memorandum Opinion and Order*, and their repetition within this claim does not require further analysis. As to the claim that Defendants violated Plaintiffs' Sixth Amendment rights, Plaintiffs do not address this argument in their *Response Brief* or submit any case law supporting this theory, and the Court has found no legal basis for such a claim.

members of a family and seriously injured a fourth family member, owed a statutory duty to the family pursuant to Section 29-1-1 for the injuries proximately caused by the deputies' failure to comply with Section 29-1-1. *Id.* ¶ 37. Defendants argue, however, that New Mexico courts have never held that the duty set forth in Section 29-1-1 extends to targets of a criminal investigation. [Doc. 19, p. 8] Instead, in the New Mexico Supreme Court's most recent pronouncement on the statute, the Court stated that the statute

> generally direct[s] officers to take steps necessary to prosecute suspected criminals, such as filing complaints against the suspects, bringing them before the courts, and assisting the prosecution. The ultimate goal of all these statutes is to further public safety by bringing suspected criminals who are already in police custody to justice.

*Weinstein*, 1996-NMSC-021, ¶ 34.

While Plaintiffs argue that Section 29-1-1 creates a duty "to establish probable cause prior to falsely arresting, imprisoning, and attempting to secure an indictment," the cases cited by Plaintiffs do not so hold. Plaintiffs cite *Cross v. City of Clovis*, 1988-NMSC-045, ¶ 6, 755 P.2d 589, which stated a general rule that "a law enforcement officer has the duty in any activity actually undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done." It is noteworthy, though, that this duty was articulated directly to answer the question of "what responsibilities law enforcement officers have to members of the public who are at risk of injury by a criminal offender when the officers are performing or attempting to perform their duties." *Id.* Plaintiffs also cite *Torres v. New Mexico*, 1995-NMSC-025, ¶ 22, 894 P.2d 386, which states that "[A]ll persons who

are foreseeably at risk within the general population are within the class of persons to be protected by the duty to investigate the statutory duty to investigate" created by Section 29-1-1.  However, *Torres* concerned a person injured by a suspected murderer whom officers failed to apprehend.  In sum, Plaintiffs fail to cite to any case holding that Section 29-1-1 creates a duty to investigate in a particular manner, and the Court does not find support for such a reading in either the language of Section 29-1-1 or the case authorities construing the statute.

Plaintiffs' interpretation of Section 29-1-1 is unpersuasive for additional reasons. First, their interpretation turns the duty expressly set forth in Section 29-1-1 - i.e., the duty to file a criminal complaint if the facts support it - on its head by reading the statute to forbid the filing of a criminal complaint where the facts do not support a complaint. This interpretation would potentially create a no-win situation under the *statute* in cases where the facts presented a "close call."  Second, Plaintiffs' request that the Court interpret the statute as protecting citizens from unsupported allegations is unjustified because the Fourth Amendment offers citizens protection from overzealous officers wrongfully seeking to institute charges absent probable cause.  Finally, existing precedent does not support Plaintiffs' claim to the extent they believe the officers had a duty to gather or preserve additional evidence.  *Cf. Cortez v. McCauley*, 478 F.3d 1108, 1121 n.18 (10th Cir. 2007) ("[O]nce probable cause is established, an officer is not required to continue to investigate for exculpatory evidence before arresting a suspect."); *Romero*, 45 F.3d at 1476-77 (holding that once probable cause to arrest existed, officers did not violate arrestee's Fourth Amendment rights by failing to investigate arrestee's alibi

witnesses). Accordingly, as Section 29-1-1 does not create the duty alleged by Plaintiffs, the Court agrees with Defendants that New Mexico has not waived immunity for Plaintiffs' claim.

Alternatively, even if the Court were to read Section 29-1-1 to create a duty not to arrest the target of a criminal investigation absent probable cause, Plaintiffs' factual allegations do not establish that they were arrested absent probable cause, as the Court has previously held.

For the above reasons, the Court holds that Plaintiffs fail to state a claim for violation of Section 29-1-1, and thus Plaintiffs' Count XIV must be dismissed.

### *Count XIII, Negligent Hire, Supervision, and Training*

In Count XIII, Plaintiffs bring a claim for negligent hiring, supervision and training.[15] [Doc. 11, ¶¶ 618-628] The NMTCA does not provide "immunity to law enforcement officers whose negligent supervision and training of their subordinates proximately causes the commission by those subordinates of the torts of assault, battery, false arrest, and malicious prosecution." *Ortiz v. New Mexico State Police*, 1991-NMCA-031, ¶ 1, 814 P.2d 117. However, "immunity is not waived for negligent training and supervision standing alone; such negligence must cause a specified tort or violation of rights." *McDermitt v. Corr. Corp. of Am.*, 1991-NMCA-034, ¶ 1, 814 P.2d 115. Defendants move to dismiss this Count on the grounds that Plaintiffs have not stated a claim for any specified tort or violation of rights. As held above in this *Memorandum*

---

[15] Plaintiffs bring this claim against "All Defendants," even those without supervisory duties.

*Opinion and Order*, Plaintiffs have not stated a claim of any underlying violation of the NMTCA. Therefore, Plaintiffs' claim for negligent hire, supervision and training within Count XIII must be dismissed.

**CONCLUSION**

**WHEREFORE,** for the foregoing reasons, the Court **GRANTS** in their entirety *Defendants' Motion to Dismiss Plaintiffs' Section 1983 Claims* [Doc. 16] and *Defendants' Motion to Dismiss Plaintiffs' State Law Tort Claims* [Doc. 18]. Plaintiffs are denied leave to move to amend their *Complaint* with regard to the dismissal of these claims. However, by prior *Memorandum Opinion and Order* the Court dismissed Plaintiffs' sole other claim, but allowed Plaintiffs leave to move to amend their *Complaint* as against Defendant UNM Board of Regents to state a claim for the Title IX violation. The Court informed the parties that it would set Plaintiffs' deadline to move for leave to amend their *Complaint* when it decided the remaining outstanding motions to dismiss. This *Memorandum Opinion and Order* addressed the remaining motions to dismiss. The Court grants Plaintiffs 21 days from the date of this *Memorandum Opinion and Order* to file their motion for leave to amend their *Complaint*.

**SO ORDERED** this 24th day of January, 2018 in Albuquerque, New Mexico.


M. CHRISTINA ARMIJO
Chief United States District Judge